## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

|  |  |  |
|---|---|---|
| LIDA BEHNAM dba LIDA TRAVEL(S) | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No.: 23cv1416 |
| | : | |
| TAMANA FAHEEM, | : | |
| LAILUMA FAHEEM, | : | |
| ARZOO FAHEEM, | : | |
| ABDUL KHABEER FAHEEM, and | : | |
| JOHN DOES 1-14 | : | |
| | : | **DEMAND FOR JURY TRIAL** |
| Defendant(s). | : | |

## COMPLAINT

COMES NOW, the Plaintiff, LIDA BEHNAM d/b/a LIDA TRAVEL(S) ("Plaintiff"), by and through her undersigned counsel, and moves this Honorable Court for judgment against the Defendants, TAMANA FAHEEM ("Tamana"), LAILUMA FAHEEM ("Lailuma"), ARZOO FAHEEM ("Arzoo"), ABDUL KHABEER FAHEEM ("Khabeer"), and John Does 1-14 (the "John Doe Defendants"; collectively, "Defendants"), on the grounds and praying for the relief hereinafter set forth:

### PARTIES

1.      Plaintiff, at all relevant times herein, was a resident of the State of California doing business as a sole proprietor under the names LIDA TRAVELS or LIDA TRAVEL.

2.      Defendants Tamana, Lailuma, and Arzoo, are residents of the Commonwealth of Virginia and are family members residing at 1395 Eisenhower Circle, Apt. 201, Woodbridge VA 22191-5230.

1

3.      Upon information and belief, Defendant Khabeer is a resident of Washington, D.C., according to Khabeer's Facebook profile and communications confirming his identity discussed *infra*. **See Exhibit A**. However, a records search of Khabeer, identifies his registered residence at 1395 Eisenhower Circle, Apt. 201, Woodbridge VA 22191-5230, similar to the other named Defendants.

4.      The John Doe Defendants' legal names are unknown at this time and the only information Plaintiff has concerning their legal identities are names used in conjunction with Google and Yelp accounts. The John Doe Defendants may be nothing more than pseudonyms used by Defendants. Plaintiff has no record of any of the John Doe Defendants soliciting services, using Plaintiff's services, or contacting Plaintiff in any way.

<u>JURISDICTION AND VENUE</u>

5.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as complete diversity exists. Plaintiff currently maintains a residence in Inglewood, California. On information and belief, Khabeer resides in Washington, D.C., or the Commonwealth of Virginia, and Defendants Tamana, Lailuma, and Arzoo are residents of the Commonwealth of Virginia. The citizenship of the John Doe Defendants is unknown, but given that Plaintiff was advertising her services in the Commonwealth of Virginia and the Defendant who initiated contact with Plaintiff is in the Commonwealth of Virginia, it is doubtful that any of the John Doe Defendants reside in the State of California. Plaintiff intends to move for leave of Court to conduct jurisdictional, *ex parte* discovery immediately in this matter to determine the identity and location of all the John Doe Defendants. The matter in controversy exceeds

$75,000.00, exclusive of interest and costs. The defamatory statements were published on an internet website accessible by all jurisdictions.

6.     Defendants have purposefully availed themselves to this jurisdiction by, among other things, making false and defamatory statements and otherwise tortiously injuring Plaintiff based on her advertisement in the Commonwealth of Virginia and conspiring with one or more Defendants (e.g., Tamana) located within the Commonwealth of Virginia.  Thus, jurisdiction is proper in this Court pursuant to Virginia Code § 8.01-328.1(A)(3) and venue is proper in this Court pursuant to Virginia Code § 8.01-261.

7.     In the alternative, jurisdiction is proper in this Court pursuant to Virginia Code § 8.01-328.1(B), which specifies that use of a computer or computer network located within Virginia constitutes an act within Virginia. Use of a computer or computer network is broadly defined as including communication with, storage of data to, or retrieval of data from any device, as well as "any function for which that computer was generally designed." § 18.2-152.2.

## STATEMENT OF FACTS

8.     Plaintiff is the principal and sole operator of a professional travel agency that has been in operation for over twenty years, since 1996, and works with top airlines to negotiate exclusive, low rates on air travel tickets to destinations such as Europe, the Middle East, South America, Australia, Asia, and the Caribbean. *See* Lidatravelinc.com.

9.     Plaintiff takes a holistic approach to travel services, offering travel insurance, car rental and transportation, hotels, tours, and related transportation services in addition to airline tickets. *Id.*

10.     Plaintiff prides herself on a proven history of excellent customer service, representing on the agency website that the "service… differentiates us from the others," and, "[w]e are proud to be measured not only by our low fares, but also by… the level of service we deliver in every step," and "the highest quality of personal service worldwide." In fact, "quality service" is the first thing advertised on the agency website. *Id.*

11.     Throughout the decades-long operation of the business, Plaintiff has relied heavily on positive reviews posted by clients describing their satisfaction with the services Plaintiff has provided them. In fact, the business's success expands primarily through positive reviews and word of mouth.

12.     Plaintiff maintains both a Google Business Profile and a Yelp account through which people can review and comment on the services provided.

13.     On November 30, 2022, Plaintiff received at least five (5) calls from prospective customer, Lailuma. Plaintiff is informed, and believes, and thereupon alleges, Lailuma and her daughter, Arzoo, contacted Plaintiff to arrange an international trip. Tamana is the daughter of Lailuma and sister of Arzoo. Khabeer is the son of Lailuma and brother of Arzoo and Tamana.

14.     Plaintiff was unable to immediately answer Lailuma's calls on November 30, 2022, due to previously scheduled obligations including a doctor's appointment, a physical therapy appointment, and being fully booked with other appointments for customers of her business.

15.     The following day, less than 24 hours after Plaintiff first received Lailuma's calls, Plaintiff discovered that a one-star review had been posted on her Google Business

Profile Page by Lailuma. This review suggested and implied that previously posted reviews praising Plaintiff's business were fraudulent and Plaintiff's business generally was fraudulent, serious accusations against any business, let alone one that coordinates travel arrangements for customers entirely reliant on those arrangements while in a foreign location.

16.     Plaintiff promptly called Lailuma back, still less than 24 hours after first being contacted by Defendant Lailuma, in order to assist Lailuma with her travel needs and inquire about the review. Lailuma's demeanor throughout the duration of the call was obstinately irate, accusatorial, and unreasonable. Lailuma characterized Plaintiff as unprofessional for not immediately returning her calls.

17.     When Plaintiff asked Lailuma about the one-star review, Lailuma stated that she asked her daughter Arzoo to post the review and believed Plaintiff deserved additional one-star reviews. **See Exhibit B**.

18.     Lailuma went on to threateningly state that she intended to ask her other children to continue leaving more one-star reviews on Plaintiff's Google Business Profile Page despite those children having neither a previous business relationship with Plaintiff nor a need for Plaintiff's services and, on information and belief, despite Lailuma's children not planning on participating in Lailuma's trip for which Lailuma solicited Plaintiff's services. When Plaintiff attempted to mollify Lailuma and work through her issues with Plaintiff's inability to immediately return her calls, Lailuma abruptly hung up the phone.

19.     In a continued effort to mitigate, Plaintiff contacted Arzoo, the daughter of Lailuma. Plaintiff explained why she could not immediately call Lailuma back, proposed a path forward, and requested that the one-star review be removed. Arzoo responded by stating she

would "multiply" the one-star review.

20.     Defendants proved that their threats were not empty or hollow. Within a short span of time, Plaintiff discovered, to her horror, that at least eighteen (18) one-star reviews had been posted to her Google Business Profile Page. Almost all of the reviews were posted by purported individuals[1] whom Plaintiff had never received requests from, whom Plaintiff had never provided services for, and whose names Plaintiff did not recognize whatsoever.

21.     In November and December 2022, Khabeer, despite never communicating with Plaintiff and Plaintiff never even given the chance to attempt to book a ticket for Khabeer's mother, posted the following reviews, stated in pertinent part:

a. "…they act like scammers….go to their reviews and see all of them are fake accounts…my family was waiting on them to book tickets…**It's not just ending here, I will make sure no one in my circle ever buys [sic] their service**" (**Exhibit C**);

b. "Poor service and disrespectful lady I've ever seen, don't go for them" (**Exhibit D**);

c. "[P]oor services, threatens to sue their customers to get a 5 star reviews" (**Exhibit E**); and

d. "SCAM. I'm being STALKED and HARASSED by the owner of this business…" (**Exhibit F**).

22.     In November and December 2022, Arzoo, despite never communicating with Plaintiff and Plaintiff never even given the chance to attempt to book a ticket for Khabeer's

---

[1] At the time of this Complaint's filing, it is unknown if the individuals who left the vast majority of these views are actual people or if the reviews were posted by Defendants from fake accounts. Plaintiff conducted a diligent investigation to identify the individuals whose names are

mother, posted the following reviews, stated in pertinent part, where applicable:

a. "…Poor customer service…and her response to people are so rude too" (**Exhibit G**); and

b. [One star review left without commentary] (**Exhibit H**); and

c. "I think all the reviews are just her Family members" (**Exhibit I**).

23.     In addition to the one-star ratings and commentary provided by Khabeer and Arzoo, upon information [see Paragraph 21(a)], Khabeer, and/or other family members, directed third parties to publish factually false comments intended to harm Plaintiff and obstruct her ability to grow the business. These fourteen (14) statements, **all made in December 2022** by fourteen (14) unknown and/or unfamiliar names, identified herein as the John Doe Defendants, included, in pertinent part, *inter alia*:

a. "Agency service does not listen to your needs and will waste your time" by Saliman payman0093 (**Exhibit J**);

b. "Unprofessional people, they don't know what they are doing" by Hameed Oriakhil (**Exhibit J**);

c. "This lady is very rude and used customer information for her own purposes" by Qais Hiakhal (**Exhibit J**);

d. "Too bad, too many notifications in this program are boring[, a statement which may no sense and it appears that language is not publisher's first language]" by Omid Noorzai (**Exhibit K**);

e. "Unprofessional staff, with rude attitude" by Idris Sherzad (**Exhibit K**);

---

associated with the accounts and has been unable to ascertain if said individuals exist.

f. "A company that does not provide proper services for their customers and disrespect

them with their criticism, which is very shameful" by <u>Abdul Rahman Tebyan</u>

(**Exhibit L**);

g. [One star review without commentary] by <u>Omid Noorzai</u> (**Exhibit M**);

h. [One star review without commentary] by <u>Idris Sherzad</u> (**Exhibit M**);

i. [One star review without commentary] by <u>Torialai Mangal</u> (**Exhibit N**);

j. [One star review without commentary] by <u>Farhan Zafarzai</u> (**Exhibits H, N**);

k. [One star review without commentary] by <u>Najeeb Ahmadzai</u> (**Exhibits E, N**);

l. [One star review without commentary] by <u>Jaseem Faheem</u> (**Exhibit E**);

m. [One star review without commentary] by <u>Tessa Woodard</u> (**Exhibit O**); and

n. [One star review without commentary] by <u>Zuhra Haikal</u> (**Exhibit O**).

24.    Additionally, and in further support of the conspiratorial nature of Defendants'
undertaking, much of the terminology used in the reviews is repetitive, including, *inter alia*,
"poor service,", "disrespectful," "rude lady" and "rude attitude." For example, "poor service"
and "does not provide proper services" are mentioned in at least four individual reviews.
Referring to Plaintiff as "disrespectful" or "rude" is also mentioned in at least four reviews,
despite Plaintiff having no record of any communication with such individuals.

25.    Additionally, Plaintiff is accused of stalking and harassment, both of which are
criminal offenses in the Commonwealth of Virginia, in at least one of the reviews. Falsely
accusing Plaintiff of criminal offenses is especially damaging to her business and reputation.

26.    Plaintiff noticed that at least four (4) of the one-star reviews were posted by an
individual named Khabeer. Plaintiff has never had a business relationship with Khabeer and has

never provided him with services of any kind. Additionally, Khabeer has never contacted Plaintiff in solicitation of her services.

27.     In an effort to mitigate her damages, Plaintiff perused social media for additional identification information of the Defendants. During her investigation, Plaintiff discovered that she had a mutual Facebook "friend" with Khabeer named Jawid Hassani ("Mr. Hassani"). Mr. Hassani is a regular client of Plaintiff's to facilitate his travels to Afghanistan.

28.     Plaintiff contacted Mr. Hassani and asked him to help her convince Khabeer to remove his baseless allegations. Mr. Hassani agreed to help and contacted Khabeer. Mr. Hassani reported back to Plaintiff that Khabeer told Mr. Hassani he created a "group chat" on an unspecified social media platform with his friends and family requesting that these individuals leave one-star reviews on Plaintiff's Google Business Profile Page. Plaintiff is informed, and believes, and thereupon alleges that the individuals in this group chat have never contacted Plaintiff for services and Plaintiff has never provided them with services.

29.     In a final attempt to mitigate her damages, Plaintiff, through counsel, sent a cease-and-desist letter to Tamana and her family. Tamana responded, stating that she "has freedom of speech and that [Tamana] can post what [Tamana] wants." Tamana further stated that she would sue Plaintiff's counsel and firm for sending the cease-and-desist letter.

30.     Through the date of this Complaint, Defendants have not removed the one-star reviews and factually false comments.

31.     Defendants continue to be responsible for their false and defamatory statements and the damages that they have caused and continue to cause Plaintiff to suffer.

32.     Defendants knew their statements in the report to be false and defamatory and

have been put on notice of this fact multiple times by Plaintiff.

33.     As a direct and proximate result of the baseless one-star reviews and factually false comments, Plaintiff has suffered significant lost business.

34.     For example, Plaintiff was engaged in arranging travel for a client named Ehhasullah Kazimi ("Mr. Kazimi") on December 11, 2022. Plaintiff had already purchased an airline ticket for Mr. Kazimi. However, after noticing the numerous one-star reviews and factually false comments about Plaintiff's business, posted after November 30, 2022, Mr. Kazimi told Plaintiff that he no longer wished to work with her, cancelled the services, and refused to accept the previously purchased ticket. Plaintiff expected to receive a twenty-five percent (25%) commission on the travel arrangements for Mr. Kazimi but lost that expected profit due to Defendants' actions. In Plaintiff's decades of operation, Mr. Kazimi was the first client to cancel a reservation.

35.     Additionally, Plaintiff has suffered a drastically decreased conversion rate of the number of prospective clients that visit her Google Business Profile and Yelp pages and subsequently retain her services. Plaintiff is informed, and believes, and thereupon alleges that this decreased conversion rate is directly and proximately due to Defendants' one-star reviews and factually false comments about Plaintiff's business.

36.     As a direct and proximate result of the baseless one-star reviews and factually false comments, Plaintiff has expended significant time and suffered costs through contacting Google and Yelp in an effort to have the reviews removed from her business pages. Plaintiff has successfully removed a small number of the reviews through dispute resolution procedures with Google and Yelp, but the majority of reviews still remain.

37.    Plaintiff has suffered further lost time and expenses through retention of legal counsel in an effort to enforce her rights in the court system.

38.    The one-star reviews and factually false comments have damaged Plaintiff's business reputation, business expectancies, ability to secure customers, and resulted in other future damages that continue to accrue in an amount to be determined at trial, but no less than $75,000.00.

STATEMENT OF CLAIMS

**COUNT I**
DEFAMATION AND LIBEL *PER SE*

39.    Plaintiff restates, re-pleads, and incorporates by reference each and every allegation as set forth above, and avers that Defendants are liable for defamation and libel *per se* as a result of their online postings.

40.    Plaintiff, at all times prior to the posting of the one-star reviews and factually false comments, enjoyed a good business reputation in the travel industry.

41.    Defendants wrote and submitted multiple one-star reviews, several of which included factually false comments about Plaintiff and Plaintiff's business, knowing these statements to be false or with reckless disregard for whether they were true or false.

42.    Defendants knew these reviews and statements to be false or posted them with reckless disregard for whether they were true or false because Defendants, each and every one of them, either had no prior business relationship with Plaintiff or posted the reviews and factually false comments prior to actually utilizing the services Plaintiff offered.

43.    It defies logic for Defendants to allege that the quality of service provided by Plaintiff and through Plaintiff's business is poor when Defendants did not so much as take the

11

time to inform Plaintiff of the details of Lailuma's trip.

44.     Specifically, the following statements are false factual statements included in the reviews posted by Defendants:

a. "act like scammers." (**Exhibit C).**

b. "does not provide proper services." (**Exhibit L).**

c. "poor service" (**Exhibits D, E).**

d. "poor customer service" (**Exhibit G).**

e. "I did not have a good experience." (**Exhibit G).**

f. "used customer information for her own purposes." (**Exhibits J, H).**

g. "I'm being STALKED and HARASSED by the owner of this business…" (**Exhibit F).**

h. "unprofessional staff." (**Exhibits K, J).**

i. "agency service does not listen to your needs and will waste your time." (**Exhibit J).**

45.     Defendants had no evidence to support their allegations that Plaintiff was "rude" or "disrespectful."

46.     Defendants had no evidence to support their statements that Plaintiff's business was "fraudulent".

47.     Defendants had no evidence to support their statements that Plaintiff engaged in the crimes of stalking and harassment.

48.     Defendants had no evidence to support their allegations that the quality of Plaintiff's services were not "proper," "poor," or so poor as to warrant numerous one-star reviews.

49.     These reviews and factually false comments were posted to the internet where they are accessible to anyone, worldwide, and likely to be viewed by those seeking international travel services.

50.     The baseless reviews are beyond mere insults, as they attempt to personally identify and disparage Plaintiff in her business. Through these reviews, Defendants have tried to wrongfully and falsely convince the worldwide internet community that Plaintiff is unprofessional, incompetent, and of low character and integrity.

51.     These reviews cannot possibly be opinions as Plaintiff had no interaction with these Defendants.

52.     Further, these reviews are designed to discourage individuals and customers from associating with or utilizing the services of Plaintiff.

53.     Defendants knew or should have known that their reviews would cause such harm to Plaintiff.

54.     These reviews were within the control of Defendants and could have been removed at any time. In fact, Plaintiff asked Defendants multiple times, including through counsel, to remove the reviews but Defendants refused and, instead, posted additional baseless one-star reviews and factually false comments.

55.     Defendants acted with actual malice in publishing and or sharing the false and defamatory statements, express and implied. When Plaintiff sought to work towards assisting Lailuma with her travel plans, Lailuma rejected Plaintiff's attempts by hanging up the phone, well before any services were actually discussed, prepared or provided.

56.     These actions are without decency, were malicious, and were the proximate

13

result of Plaintiff having been caused to suffer humiliation, embarrassment, mortification, shame, vilification, ridicule, exposure to public infamy, disgrace, scandal, injury to reputation and feelings, financial loss, lost profits, and being hampered in the conduct of Plaintiff's business and affairs.

57.     Much of this injury will endure permanently as defamatory statements as it will "live on forever" on the worldwide web because both Google and Yelp are primary platforms for reviewing business services and assisting customers in determining whether or not they would engage the services of a business.

58.      In addition to damages from lost business, unless and until Defendants' actions are enjoined, Plaintiff will continue to suffer actual damages from decreased conversion, declined business revenue, and irreparable harm to professional reputation.

59.     In addition to compensatory damages, the aforementioned acts of Defendants were willful, wanton, malicious, and intentional, and also justify the awarding of punitive damages to Plaintiff in the amount of $350,000.00 pursuant to Va. Code § 8.01-38.1. As stated *supra*, much of this injury will endure permanently as defamatory statements "live on forever" on the worldwide web.

WHEREFORE, Plaintiff moves this Court for judgment against Defendants, jointly and severally, in the amount of no less than SEVENTY-FIVE THOUSAND DOLLARS ($75,000) in compensatory damages, THREE HUNDRED FIFTY THOUSAND DOLLARS ($350,000) in punitive damages, together with costs expended, interest, and any additional relief this Court may deem just and proper.

## COUNT II
## STATUTORY BUSINESS CONSPIRACY - VA. CODE § 18.2-499, *et s*eq.

ALTERNATIVELY, COMMON LAW CONSPIRACY

60.     Plaintiff restates, re-pleads, and incorporates by reference each and every allegation as set forth above, and avers that the Defendants are liable for statutory business conspiracy pursuant to Va. Code § 18.2-499, *et seq*., or alternatively, common law conspiracy.

61.     Defendants combined, associated, agreed or acted in concert together for the purpose of willfully and maliciously injuring Plaintiff in her business.

62.     Defendants combined with and solicited each other to post false and defamatory reviews on Plaintiff's Google Business Profile and Yelp accounts in order to harm Plaintiff's business.

63.     Thereafter, these individuals posted several false, negative, and defamatory reviews on Plaintiff's Google Business Profile and Yelp accounts.

64.     Defendants acted maliciously, intentionally, purposefully, and without lawful justification in posting such defamatory reviews, and harming Plaintiff's business and reputation.

65.      As a result of Defendants' actions, Plaintiff has incurred damages, which include, but are not limited to, lost customer relationships, lost profits, pecuniary loss, damage to reputation, emotional distress, and other business-related damages.

66.     Pursuant to Virginia Code § 18.2-500, Plaintiff seeks treble damages in an amount to be proven at trial but not less than $225,000.

67.     Pursuant to Virginia Code § 18.2-500, Plaintiff seeks statutory attorneys' fees.

WHEREFORE, Plaintiff moves this Court for judgment against Defendants, jointly and severally, in the amount of no less than SEVENTY-FIVE THOUSAND DOLLARS ($75,000)

in compensatory damages, together with costs expended, her reasonable attorney fees, interest, and any additional relief this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues raised by this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, the premises considered, Plaintiff respectfully prays that this Honorable Court:

A. Enter judgment on Plaintiff's behalf against Defendants, as applicable;

B. Award Plaintiff compensatory damages under Count I against Defendants, jointly and severally, in the amount of not less than $75,000.00;

C. Awarding of Plaintiff punitive damages under Count I against Defendants, jointly and severally in the amount of $350,000.00 pursuant to Va. Code § 8.01-38.1;

D. Award Plaintiff trebled, compensatory damages under Count II against Defendants, jointly and severally, in the amount of not less than $225,000.00;

E. An award of all reasonable attorney's fees incurred in this action in connection with Plaintiff's prosecution of her claims as to Count II, as well as court costs, other litigation costs, and pre- and post-judgment interest as to Counts I and II, or otherwise permitted by law;

F. Permanent enjoin Defendants, and their agents, servants, and those persons in active concert or participate with Defendants from publishing further defamatory statements about Plaintiff;

G. Direct Yelp and Google to remove the publications by Defendants as identified in the

Complaint and corresponding exhibits in this matter as to Plaintiff.; and

H. For such other relief as this Court may consider just and proper.

Date: October 18, 2023,                    Respectfully submitted,

                                           LIDA BEHNAM dba LIDA TRAVEL(S)

                                           By Counsel

                                    By: _____
                                           Robert Powers, Esq.
                                           Tyler Roth, Esq.
                                           MCCLANAHAN POWERS, PLLC
                                           3160 Fairview Park Drive, Suite 410
                                           Falls Church, VA 22042
                                           Telephone: (703) 520-1326
                                           Facsimile:  (703) 828-0205
                                           Email:   rpowers@mcplegal.com
                                                    troth@mcplegal.com
                                                    mmurawiec@mcplegal.com
                                           *Counsel for Plaintiff*

## CERTIFICATE OF TRANSMISSION

I hereby certify that the forgoing COMPLAINT with referenced EXHIBITS is being electronically transmitted on the date noted below via the CM/ECF system of the U.S. District Court for the Eastern District of Virginia at https://ecf.vaed.uscourts.gov/. The requisite filing fee of $400.00 and any additional fees related to this matter are being charged to an American Express credit card concurrently with this filing.

Date: October 18, 2023,              By: _____
                                           Robert Powers, Esq.
                                           One of the Attorneys for Plaintiff